UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 200,<br><br>   *Plaintiff*,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN AS CO-EXECUTORS OF THE ESTATE OF JEFFREY E. EPSTEIN,<br><br>   *Defendants*. | Civil Action No. 1:24-cv-4775-ER |

**STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Unless otherwise agreed to by the parties or otherwise ordered by the Court, this Stipulated Order Regarding the Production of Documents and Electronically Stored Information ("ESI") shall govern the preservation, collection and production of Documents and ESI produced for use in the above-captioned case. This stipulation is subject to and without waiver of any objections that the parties may make in response to discovery.

I.   DEFINITIONS

  A.   **"Document"** shall be interpreted consistently with the Federal Rules of Civil Procedure.

  B.   **"Electronically stored information"** or **"ESI,"** shall be construed consistent with the Federal Rules of Civil Procedure and as used herein, means and refers to electronically stored information, including, but not limited to, documents stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media vehicles for digital data storage.

  C.   **"Native file(s)"** means ESI in the file type for the application in which such ESI is normally created, viewed, and/or modified.

  D.   **"Metadata"** shall have its plain and ordinary meaning and, for purposes of this matter, references the data fields outlined in Section II.H below which describe the characteristics, origins, and usage of electronic evidence.

1

E.  **"Load file"** means a file or files containing a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the individual documents, such as agreed-upon metadata, coded data, and OCR or extracted text.

F.  **"OCR"** means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable using appropriate software.

G.  **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

H.  **"TAR"** (Technology-Assisted Review) means a process for prioritizing or coding a collection of ESI using a computerized system, using algorithms or systematic rules, that harnesses human judgments of subject matter expert(s) on a smaller set of Documents and then extrapolates those judgments to the remaining Documents in the collection. TAR systems generally incorporate statistical models and/or sampling techniques to guide the process and to measure overall system effectiveness.

II.  **DISCLOSURES**

   A.  **Custodial Data Sources**

Each Party will identify proposed custodians from whom documents will be collected and produced. Each Party shall, to the extent it has not done so already, begin the collection process as to those custodians as to whom the Parties agree. The Parties may agree to produce further custodians as agreed in the Parties' meet-and confer process.

   B.  **Non-Custodial Data Sources**

Each Party will propose the non-custodial data sources from which documents will be collected and produced. Each Party shall, to the extent it has not done so already, begin the collection process as to those non-custodial data sources as to whom the Parties agree. The Parties may agree to produce further non-custodial data sources as agreed in the Parties' meet-and confer process.

III.  **SEARCHES**

   A.  **Search Terms**

To the extent a producing Party intends to use search terms and/or Boolean search strings (together, "Search Terms") or other limiters, including, by way of example only, date ranges and email domains in Metadata fields, as a means of limiting the volume of information to be reviewed for responsiveness that producing Party shall disclose the following to the requesting party:

   1.  The custodians whose ESI will be searched using Search Terms, and a description of the custodial data sources and non-custodial

2

        data sources against which the limiters and/or Search Terms shall be run; and

2.     An initial list of the limiters and/or Search Terms the producing party intends to use.

### B.    TAR and Similar Advanced Analytics

If a producing Party elects to use TAR or similar advanced analytics as a means of including or excluding Documents and ESI to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, prior to the use of such tool the producing party shall disclose to the requesting Party:

1.     the custodial data sources and non-custodial data sources against which TAR will be run;

2.     a description of the proposed TAR process;

3.     any other disclosures that are reasonably necessary for the requesting Party to evaluate the reasonableness of the TAR process.

### C.    Structured Databases

To the extent a response to discovery requires production of information contained in structured databases, the Parties will meet and confer to discuss an appropriate production protocol for information from such structured databases.

## IV.    PRODUCTION FORMAT

Except as detailed below, all scanned paper and ESI should be converted/processed to TIFF files, Bates numbered, and include fully searchable text.  The below specifications shall not apply to documents produced to Plaintiffs' counsel in prior litigations.

### A.    Global De-Duplication

The parties shall de-duplicate ESI to avoid substantially duplicative productions. The parties hereby agree that production of Documents and ESI globally de-duplicated in accordance with the provisions of this Order shall constitute production of Documents and ESI as maintained in the ordinary course of business. The parties will globally de-duplicate as follows:

1.     Electronic files: Electronic files will be de-duplicated based upon calculated MD5, SHA-1 or another reasonable equivalent alternative Hash values for binary file content.

2.     Emails: Emails will be de-duplicated based upon Hash values for the email family, including parent object and attachments.  The following fields will be used to create the unique value for each email: To; From; CC; BCC; Subject; Body; and binary stream of all attachments.  Emails will be de-duplicated at a family level, including the message and attachment(s).

    3.    Documents will be de-duplicated against the entire population and all custodians of a de-duplicated document will be listed in the "ALL CUSTODIANS" field.

    4.    No Producing Party shall be required to, but may, eliminate duplicates by manual review, except that paper documents that are exact duplicates of electronic versions cannot be deduplicated. Such Documents could include copies of materials printed and stored in boxes but never used, or Documents printed but not distributed. However, any Document containing handwritten notes, marginalia or markings would not be considered a duplicate of an electronic version and, if responsive, must be produced as an original Document.

**B.    Email Thread Suppression**

Email threads are Emails that contain prior or lesser-included Emails. A most inclusive Email thread is one that contains all of the prior or lesser-included Emails and attachments, including each branch of the Email thread. A producing party may use Email Thread Suppression to exclude Email from production, provided that an Email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included Email, even if all other content in the most-inclusive Email is identical.

**C.    Bates Numbering Documents**

    1.    All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; and (3) be sequential within a given document.

    2.    If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing Party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

**D.    Images**

    1.    Images should be single-page, Group IV TIFF files, scanned at 300 x 300 dpi resolution.

    2.    Bates numbers should be endorsed on the lower right corner of all images.

    3.    The file name for each image should be the Bates number reflected in the lower right corner of each image.

    4.    The number of TIFF files per folder should not exceed 1,000 files.

    5.    All TIFF images shall display tracked changes, comments, and other rich data as displayed in the document, if the track changes were visible in the last saved version of the document, whenever possible.

  6. All TIFF-formatted documents will be produced in black and white. The producing party will comply with reasonable requests to produce particularly identified ESI in the original, color image of specific documents (*e.g.*, where the color is relevant to the interpretation of the document). If a dispute arises as to the reasonableness of the request, the parties shall meet and confer in an effort to resolve their differences.

**E.** **Text**

Searchable text of the entire document must be provided for every record, at the document level, to the extent text exists in the Document. Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. The text file name shall be the same as the Beginning Bates number the document. File names shall not have any embedded spaces.

**F.** **Paper Documents**

  1. Paper Documents, including spreadsheets maintained in paper form,[1] shall be produced as TIFF images (consistent with the specifications in Section II.C.) The production will include the appropriate load file which will, at a minimum, contain the following fields (described in detail in Section II.K.7.):

    (a) Beginning Bates Number (PRODBEGNUMBER)

    (b) Ending Bates Number (PRODENDNUMBER)

    (c) Beginning Attachment Bates Number (PRODBEGATTACH)

    (d) Ending Attachment Bates Number (PRODENDATTACH)

    (e) Custodian

    (h) Text Path (TEXTLINK).

  2. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized) unless linked as a document family.

**G.** **Production and Use of Native Files**

  1. **Production of Native Files**

    (a) The full path of the native file, as it exists in the production, must

---

1. If spreadsheets are maintained in native form, the producing party may not intentionally produce them in paper form only. This does not, however, impose a duty on the producing party to search for duplicate electronic versions of spreadsheets identified in paper form.

          be provided in the .DAT file for the NATIVELINK field.

    (b)    The number of native files per folder should not exceed 1,000 files.

    (c)    For files not also imaged to TIFF format, a placeholder image that identifies the Bates number and confidentiality designation associated with the native document must be provided in lieu of a TIFF image.  The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet.  Produce the following documents in native format with an image placeholder unless redactions are required:

        (i)    Microsoft Excel documents (with all data unhidden) including CSV files that are not easily converted to TIFF images;

        (ii)    PowerPoint Files; and

        (iii)    Multimedia files (audio, visual, etc.).

    (d)    To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to discuss options.

### H. Processing Errors

The producing Party need not initially produce documents that cannot be processed for technical reasons.  Should the other Party believe that processing and production of a certain document is warranted despite the technical difficulties initially encountered, the Parties shall meet and confer to determine an appropriate course of action and which Party should bear the cost of further processing.

### I. Confidentiality Designations

Responsive documents will be stamped with the appropriate confidentiality designations in accordance with any Protective Order. Each responsive document produced in native format will have its confidentiality designation identified in the file name of the native file. Confidentiality designations shall be provided both endorsed on the pages of the document and as a metadata field. Any document without a confidentiality designation in the load file shall not be considered confidential.

### J. Password Protected Files

A party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Ordered Stipulation, and the decrypted Document is produced.  To the extent an encrypted or password-protected Document cannot be accessed by the party producing it, that Document does not have to be produced.

**K.    Image Load File**

The image key within each production load file shall be named the same as the Bates number of the page. The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database. The name of the image load file shall mirror the name of the delivery volume and should have an .opt extension (e.g., ABC001.opt). The volume names shall be consecutive (e.g., ABC001, ABC002, *et. seq*.).

The format is as follows:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

*ImageID*: The unique designation that *Concordance®* and *Concordance Image®* use to identify an image.

*Note*: *This imageID key **must** be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. The format should be a 7 digit number to allow for the possible increase in the size of a production. The imageID should correspond exactly to the Begin Bates number in the document, including both the Bates prefix and the fixed length number (*e.g. ABC0000001*).*

*VolumeLabel*: Optional

*ImageFilePath*: The full path to the image file.

*DocumentBreak*: The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.

*FolderBreak*: Leave empty

*BoxBreak*: Leave empty

*PageCount*: Optional

**L.    Metadata**

    1.    The metadata load file shall use the following standard Concordance delimiters:

        (a)    Comma: ¶ (Character 20)

        (b)    Quote: þ (Character 254)

        (c)    Newline: ® (Character 174)

        (d)    Multi-line: ; (Character 59)

2. All date fields shall be produced in "mm/dd/yyyy."

3. A carriage-return line-feed shall be used to indicate the start of the next record.

4. Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.) – *i.e.*, a separate volume shall be created for each piece of media delivered.

5. The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat extension (*i.e.*, ABC001.dat).

6. The volume names shall be consecutive for each produced source. (*i.e.*, ABC001, ABC002, *et. seq*.

7. The first record shall contain the field names in order of the data set forth in the chart below. The text and metadata of email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below.

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| PRODBEGNUMBER | EDC0000001 | Begin Bates number (production number) | All |
| PRODENDNUMBER | EDC0000001 | End Bates number (production number)<br><br>**The PRODENDBATES field should be populated for single page documents/emails. | All |
| PRODBEGATTACH | EDC0000001 | Begin Bates number of family unit (*i.e.*, Bates number of the first page of the parent email) | All |
| PRODENDATTACH | EDC0000015 | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment) | All |

8

| Field Name | Sample Data | Description | Applicable Doc Type |
| --- | --- | --- | --- |
| CUSTODIAN | Smith, John | Individual from whom the document originated | All |
| ALL_CUSTODIANS | Doe, John; Doe, Jane; Roe, John | If documents are de-duplicated, all custodians with a particular document should be provided with a semicolon delimiter | All de-duplicated documents |
| PARENTID | EDC0000001 | Begin Bates number of a parent document | All |
| ATTACHIDS | EDC0000015; EDC0000016 | Begin Bates number of each child attachment separated by ";" | All |
| FROM | John Smith | Author of the e-mail message | Email |
| TO | Coffman, Janice; LeeW [mailto:LeeW @MSN.com] | Main recipient(s) of the e-mail message **semi-colon should be used to separate multiple entries | Email |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Recipient(s) of the "Carbon Copies" of the e-mail message  **semi-colon should be used to separate multiple entries | Email |
| BCC | John Cain | Recipient(s) of "Blind Carbon Copies" **semi-colon should be used to separate multiple entries | Email |
| EMAIL SUBJECT | Board Meeting Minutes | Subject field extracted from the metadata of an email file | Email |
| TITLE | Board Meeting Minutes | The title of a document | E-docs |

9

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| AUTHOR | John Smith | Creator of the document | E-docs |
| CREATEDATE | 10/10/2010 | Date the file was created | E-docs |
| CREATETIME[2] | 7:00 PM | Time file was created | E-docs |
| SORTDATE | 10/10/2010 | Families: Date of the parent document<br>Single/Loose Files: Date and Time of the Document<br>*Email = Sent Date and TIme<br>*Electronic Loose File = LastMod Date and Time | Email and E-docs |
| LASTMODDATE | 10/12/2010 | Date the document was last modified | E-docs |
| LASTMODTIME | 7:00 PM | Time document was last modified | E-docs |
| SENTDATE | 10/12/2010 | Date the email was sent | Email |
| SENTTIME | 7:00 PM | Time email was sent | Email |
| FILESIZE | 5,952,000 | File size in bytes | Email and E-docs |

---

2. Date and Time fields may also be combined into a single field fand included in the loadfile as a single combined value.

| Field Name | Sample Data | Description | Applicable Doc Type |
| --- | --- | --- | --- |
| FILEPATH | J:\Shared\SmithJ\OctoberAgenda.doc | Original Path to the document. Includes Folder information for Emails, Windows Directory structure for loose files | Email and E-docs |
| FILEXT | MSG | The file type extension | Email and E-docs |
| DOCTYPE | email | File Type: email, image, spreadsheet, presentation, etc. | All |
| HASH | A558c8b8295854fa69a2ad9a7cc75ab7 | Unique identifier of the file | All |
| FILENAME | OctoberAgenda.doc | Original name of the file or subject of email | E-docs |
| TEXTLINK | .\ABC-002\TEXT\TEXT001\EDC-0000001.txt | Contains Path to .TXT files | All |
| DOCLINK | .\ABC-001\NATIVES\NATIVES001\EDC-0000001_Confidential.xls | Contains path to native files | Email and E-docs |
| Confidentiality | Confidential | Document has been determined by counsel to be Confidential | Documents determined by producing Party to be confidential |
| Redactions | Redaction stamp(s) | Document has been redacted | All |

8.     Electronic file collection will be "De-NISTed," removing commercially

11

available operating system and application files contained on the current NIST file list. Identification of NIST list matches will be through Hash values.

  M. **Compressed files**

Compression file types (*i.e.*, .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in an iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

  N. **Replacement files**

Any documents that are replaced in later productions shall be identified in a letter accompanying the production clearly designating such documents as replacements.

  O. **Time Zone**

The preferred time zone of processing ESI is UTC. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI.

  P. **Privilege Logs**

Any privilege logs produced shall be in an electronic format that allows text searching. The parties shall be required to log partially redacted documents.

**V. ELECTRONIC COLLECTION METHODS**

The parties need not employ forensic data collection or tracking methods and technologies, but instead may make electronic copies for collection and processing purposes using widely-accepted best practices or methods described in manufacturers' and/or programmers' instructions, help menus, websites, and the like (e.g., .pst's, .zip's, etc.).

The parties shall utilize collection methodologies that avoid overwriting or altering preexisting metadata such as file creation date or last modified date.

**VI. OTHER PRESERVATION OBLIGATIONS NOT AFFECTED**

Nothing in this Stipulation shall affect any other obligations of the parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, regulation, or in response to other pending or anticipated litigation. In addition, nothing in this Stipulation shall eliminate or alter any party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

**VII. NO WAIVER OF RIGHT TO MODIFY**

This Stipulated Order may be modified by a Stipulated Order of the parties by the Court for good cause shown or for any other reason the Court deems appropriate.

Dated:  December 12, 2024

| | |
|---|---|
| EDWARDS HENDERSON<br><br>/s/ *Bradley J. Edwards*<br>Bradley J. Edwards<br>Brittany N. Henderson<br>425 N. Andrews Ave., Suite 2<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 524-2820<br>Email: brad@cvlf.com<br>        brittany@cvlf.com<br>        ecf@cvlf.com<br><br><br>*Attorneys for Plaintiff* | PATTERSON BELKNAP WEBB & TYLER LLP<br><br>/s/ *Daniel S. Ruzumna*<br>Daniel S. Ruzumna<br>Amy N. Vegari<br>1133 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 336-2000<br>Email: druzumna@pbwt.com<br>Email: avegari@pbwt.com<br><br>*Attorneys for Defendant Richard D. Kahn, in his capacity as Co-Executor for the Estate of Jeffrey E. Epstein*<br><br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br><br>/s/ *Bennet J. Moskowitz*<br>Bennet J. Moskowitz<br>875 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 704-6000<br>Email: bennet.moskowitz@troutman.com<br><br>LINK & ROCKENBACH, PA<br><br>Scott J. Link (*pro hac vice*)<br>1555 Palm Beach Lakes Boulevard<br>West Palm Beach, Florida 33401<br>Telephone: (561) 847-4408<br>Email: scott@linkrocklaw.com<br><br>*Attorneys for Defendant Darren K. Indyke, in his capacity as Co-Executor for the Estate of Jeffrey E. Epstein* |

**SO ORDERED.**

Dated:
New York, New York

_____
Honorable Edgardo Ramos
United States District Judge