

www.pbwt.com

February 28, 2025

Daniel Ruzumna
(212) 336-2034
druzumna@pbwt.com

**VIA ECF**

The Honorable Edgardo Ramos
United States District Judge
40 Foley Square
New York, NY 10007

Re:     <u>*Doe 200 v. Indyke et al.*, Case No. 24-cv-4775 (ER)</u>

Dear Judge Ramos:

      Pursuant to Rule 2.A of Your Honor's Individual Rules and Local Civil Rule 37.2, we write on behalf of Darren Indyke and Richard Kahn (the "Co-Executors"), Co-Executors of the Estate of Jeffrey E. Epstein (the "Estate"), to request an informal conference with the Court before filing a motion for a protective order and to quash, or substantially limit, Plaintiff's subpoenas for the depositions of Mr. Indyke and Mr. Kahn.  *See* Ex. A (deposition subpoena to Darren Indyke); Ex. B (deposition subpoena to Richard Kahn).  The Co-Executors do not have personal knowledge of Plaintiff's allegations, and Plaintiff has not alleged otherwise.  In fact, Mr. Kahn, an outside accountant for Epstein, did not start working for Epstein until 2005—*four years after Plaintiff's alleged rape and her intimate relationship with Epstein ended*.  Mr. Indyke, one of Epstein's outside lawyers, is not alleged to have any knowledge of or connection to Plaintiff's interactions with Epstein.  At a meet-and-confer session regarding the propriety of the Co-Executors' depositions, Plaintiff's counsel initially asserted that the depositions were intended to question the Co-Executors in their capacity as co-executors about document collection efforts by the Estate.  But the Co-Executors' counsel explained that because all Estate documents had been collected for earlier litigations, the Co-Executors had no involvement in document collection, and asked if Plaintiff would stipulate to that limited scope for the depositions.  Plaintiff refused, and then offered another purported justification for the depositions—that Plaintiff seeks to question the Co-Executors about *other* women's allegations of sex abuse by Epstein.  But neither Co-Executor has personal knowledge about Epstein's alleged abuse of Plaintiff or any other alleged Epstein victim.  Any allegations they learned about as co-executors or as outside service providers for Epstein offers no basis for their deposition.  To the extent Plaintiff seeks evidence about other women's allegations of abuse by Epstein, that is available through endless other sources.  Plaintiff's proffered explanations for the depositions are a ruse; the purpose is merely to harass the Co-Executors.  The subpoenas should be quashed and a protective order issued.

**I.     <u>There is No Basis to Depose the Co-Executors in their Individual Capacity.</u>**

      Plaintiff claims to have been Epstein's girlfriend in 2001, until he suddenly raped her on one occasion in the fall of 2001.  Dkt. No. 1 ¶¶ 18, 33.  Only one person—an unidentified masseuse—is alleged to have witnessed the event, *id.* ¶¶ 36-39; Plaintiff does not allege she ever

Hon. Edgardo Ramos
February 28, 2025
Page 2

told anyone about it, and she claims she saw Epstein only one other time, when she traveled to and stayed at Epstein's New Mexico ranch in 2003. *Id.* ¶¶ 44-48. She does not allege that she worked for Epstein, that she was a victim of commercial sex trafficking, or that she was paid for sex acts as a minor or as an adult.

The Complaint does not allege that Plaintiff ever met or interacted with Mr. Indyke or Mr. Kahn; that either of them witnessed the alleged rape or discussed it with Plaintiff, Epstein, or anyone else; or that they had any knowledge of Plaintiff's allegations before she brought a claim against the Estate years after Epstein's death. Mr. Kahn did not even begin working for Epstein until 2005, four years after the alleged rape. And while Mr. Indyke worked as an outside lawyer for Epstein in 2001, Plaintiff offers no basis whatsoever to suggest that he has personal knowledge relevant to her claims—and he does not. In these circumstances, a deposition of the Co-Executors in their personal capacity is unwarranted and serves no purpose other than to harass and burden them. *See* Fed. R. Civ. P. 45 (providing that upon a timely motion, a court "must quash or modify a subpoena that … subjects a person to undue burden"); *see also* Fed. R. Civ. P. 26(c) (a person should be protected from discovery that would cause "annoyance, embarrassment, oppression, or undue burden or expense" where "good cause" is shown); *Eisemann v. Greene*, No. 97-cv-6094(JSR), 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998) (quashing a deposition subpoena to non-party witness who worked at the plaintiff's doctor's office but had not become employed until "well after the date [the doctor] treated the plaintiff"). Indeed, "denying personal knowledge of the relevant facts"—as the Co-Executors do here without dispute—can "form a basis for issuing a protective order." *See Jones v. Hirschfeld*, 219 F.R.D. 71, 77 (S.D.N.Y. 2003); *Ackermann v. New York City Dep't of Info. Tech. & Telecomms.*, No. 09-cv-2436 JBW/LB, 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010) (quashing deposition subpoena because witness "state[d] that he has no personal knowledge of plaintiff's claim"). Likewise, a subpoena can be quashed and a protective order entered in "the absence of any basis for believing [a subpoenaed individual] has non-privileged information regarding any relevant matter." *Jones*, 219 F.R.D. at 78.

Given the Co-Executors' complete lack of personal knowledge of Plaintiff's alleged rape in 2001, her subsequent visit to Epstein's ranch, or her repeated efforts to speak with or see Epstein, their depositions cannot possibly yield information about her individual claims. And if Plaintiff were to argue that the Co-Executors developed knowledge of Epstein's legal or accounting matters based on their work as one of Epstein's outside lawyers or accountants, such knowledge has no relevance to her claims here, which Plaintiff admits are "unique" and do not rely on any legal or accounting issues. Plaintiff has one purpose in seeking the Co-Executors' depositions—to harass them.

II. **There Is No Basis to Depose the Co-Executors in their Capacity as Co-Executors.**

In the Parties' meet-and-confer session, Plaintiff's counsel cited Federal Rule of Evidence 415 to argue that Messrs. Kahn and Indyke, in their capacities as co-executors, have learned second- or third-hand about other women's rape allegations against Epstein, and that provides a basis for their depositions. But any testimony by Mr. Indyke or Mr. Kahn about the alleged conduct would not be based on personal knowledge; rather, it would be based on court documents, claims asserted by lawyers representing those women, or submissions in various mediations. The Co-Executors should not be subject to deposition to testify about this multi-

Hon. Edgardo Ramos
February 28, 2025
Page 3

layered hearsay, especially when court filings are publicly available and Plaintiff's very own counsel were the lawyers who brought the largest number of cases against Epstein and the Estate. Indeed, Plaintiff's own discovery responses identify three alleged Epstein victims whom Plaintiff presumably seeks to offer pursuant to Rule 415.[1]

Moreover, Plaintiff herself has specifically alleged the lack of similarity between her allegations and those raised by other alleged Epstein victims.  *See* Dkt. No. 1 ¶¶ 34-35 (Epstein's assault of Plaintiff "was different from his now widely reported *modus operandi*"; Epstein "infiltrated [Plaintiff's] life in a unique and arguably more disturbing way").  Plaintiff is strategically attempting to make this case about anything and everything *but* her incredible allegations.  Even if there were "similar act" evidence admissible under Rule 415, subject to Rule 403's limitations, neither Mr. Indyke nor Mr. Kahn has any information about it—personal or otherwise.  Accordingly, any deposition testimony by the Co-Executors about other claims of purported sex abuse would necessarily involve multiple layers of hearsay and would be dissimilar to the "unique" allegations by Plaintiff.

Finally, Plaintiff's counsel has suggested that the Co-Executors should be required to testify at deposition about document collection efforts in this litigation.  Relevant documents were collected well before this case, and the Co-Executors were not involved in the discovery collection or production process here.  Depositions of the Co-Executors would be inappropriate on that subject.  But at a minimum, any deposition of the Co-Executors should be limited to document collection issues—and any such deposition should be limited to two hours or less.

\*    \*    \*

Because the subpoenaed depositions will not lead to discovery of facts relevant to any party's claim or defense, are not proportional to the needs of the case, and are merely designed to harass and burden Mr. Indyke and Mr. Kahn, the Court should quash the subpoenas or, at a minimum, limit the scope and duration of the Co-Executors' depositions through the issuance of a protective order.

Respectfully submitted,

Daniel S. Ruzumna

cc: All counsel of record (via ECF)

---

[1] If "similar act" evidence were admitted at trial pursuant to Rule 415, the Co-Executors would potentially testify about the claims administration programs set up to address Epstein's abuse of women.